UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 5:19-CV-00129-FDW

| | |
|---|---|
| STEPHANIE ANN LINARES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Stephanie Ann Linares's Motion for Summary Judgment (Doc. No. 15) and Commissioner's Motion for Summary Judgment (Doc. No. 19). Linares, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits under 42 U.S.C. § 405(g).[1] For the following reasons, Linares's Motion for Summary Judgment is GRANTED, Commissioner's motion is DENIED, and the Commissioner's decision is REVERSED and REMANDED to the Social Security Administration. The Court also grants, *nunc pro tunc*, the pending motions for extensions of time to file (Doc. No. 18, 21) and deems the responses to the summary judgment motions to be timely filed.

### I. BACKGROUND

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2016).

1

From the outset, the Court notes this case has had a lengthy procedural background. It is now before the district court now a second time. Linares first filed an application for Title XVI benefits on January 31, 2011, alleging disability since August 9, 2009. (Tr. 146). Linares's application was denied on July 8, 2011 and was denied again upon reconsideration on September 12, 2011. (Tr. 65-74, 76-89). Linares requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 30, 2013, before ALJ Wendell M. Sims. (Tr. 13-14). After the hearing, the ALJ denied Linares's application in a written decision dated February 21, 2013. (Tr. 14-25). On July 17, 2015, the court entered an order remanding the February 21, 2013 decision because the ALJ failed to perform a proper function-by-function analysis of Linares's RFC. Linares v. Colvin, No. 5:14-CV-00120, 2015 WL 4389533 (W.D.N.C. July 17, 2015). Specifically, Judge Graham C. Mullen remanded this case with the clear instruction that the ALJ provide "a full explanation as to how he arrived at his conclusions." Id. at *8. On July 22, 2016, a second ALJ hearing was held. (Tr. 1471-1504). After the hearing, the ALJ denied Linares's application in a written decision dated January 25, 2017. (Tr. 1582-1611). On February 23, 2017, Linares's request for review of the ALJ's decision by the Appeals Council was granted (Tr. 1728) and on September 27, 2018, the Appeals Council remanded this case again because the ALJ failed to comply with this District Court's Order to fully explain how the ALJ reached his conclusions. (Tr. 1612-1624). On February 27, 2019, a new ALJ, Todd D. Jacobson, held a hearing and denied Linares's application in a written decision dated June 6, 2019. (Tr. 705).

In reaching his decision, ALJ Jacobson used the five-step sequential evaluation process for the evaluation of disability claims under the Social Security Act ("the Act"). (Tr. 709-710); 20 C.F.R. § 416.920(a)(4). At the first step, the ALJ determined Linares had not engaged in substantial

gainful activity since the filing of her alleged onset date of August 9, 2009. (Tr. 711). At step two, the ALJ determined Linares had severe impairments including "history of tachycardia and irritable bowel syndrome, degenerative disc disease, chronic pain syndrome, status post lumbar fusion, spinal stenosis, radiculopathy, post-surgical thoracic changes, hypertension, headaches, depression and an anxiety disorder." Id. At step three, the ALJ found Linares did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments ("the Listings") found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 711-12). The ALJ then determined Linares had the Residual Functional Capacity ("RFC"):

> [T]o perform "light" work as defined in 20 CFR 404.1567(b) except she was limited to the occasional climbing of ladders, stooping, kneeling and crouching. She would have been capable of frequent balancing. Furthermore, she was capable of simple, routine, repetitive tasks for two-hour intervals throughout the day for the duration of the workday. She was to have no more than occasional interaction with the public in a stable work environment.

(Tr. 712-13). The vocational expert ("VE") testified an individual with Linares's RFC could not perform her past relevant work. (Tr. 721). In response to a hypothetical that factored in Linares's age, education, work experience, and RFC, the VE testified that an individual with these limitations could perform jobs in the national economy. (Tr. 721-22). The VE proceeded to list jobs which exists in significant numbers in the national economy. Id. Thus, the ALJ concluded Linares was not disabled, as defined in the Social Security Act. Id. Linares has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. § 405(g). (Doc. No. 1).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied

3

correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4)

4

could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861-62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)) (alterations in original). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so

5

that [the ALJ] can determine how [her] symptoms limit [her] capacity for work."
20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden regarding past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

### III.    ANALYSIS

On appeal, Linares claims the ALJ erred in the following ways: (1) failure to conduct a proper function-by-function analysis and provide a complete explanation of Linares's physical RFC, (2) failure to account for step two and step three findings in the ALJ's mental RFC assessment, and (3) failure to account for Linares's pain in the RFC. (Doc. No. 16). The Court agrees that, on the record before the Court, remand is necessary.

A claimant's RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). When determining a claimant's RFC, an ALJ must base his finding on all the relevant evidence in a claimant's case record, including medical determinable impairments that are not deemed severe, 20 C.F.R. § 404.1545 (a)(1)-(2). The Fourth Circuit has explained, "[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3)

6

conclusion." Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019), as amended (Feb. 22, 2019). Seeing as this case has already been remanded twice because of the ALJ's failure to provide a full explanation of how he arrived at his conclusions, the Court feels it is necessary to reiterate "The second component, the ALJ's logical explanation, is just as important as the other two." Id. Logical explanation requires "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Monroe, 826 F.3d at 189 (citations and internal quotation marks omitted); SSR 96-8p. However, a narrative discussion of functions that are irrelevant or uncontested is not necessary. See Mascio, 780 F.3d at 636 (holding that remand would be futile for the lack of a function-by-function analysis of irrelevant or uncontested functions).

### A. Mental RFC

An ALJ assesses the functional limitations of a claimant's mental impairments in four broad categories: activities in daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. pt. 404, subpt. P, app. 1, § 404 12.00(C). Social functioning refers to a claimant's ability "to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. pt. 404, subpt. P, app. 1, § 404 12.00(C)(2). The measure of a claimant's limitation is evaluated on a five-point scale comprised of the following degrees of limitation: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). If a claimant's mental limitations in one of these four broad categories does not meet or equal those listed in the paragraph B or C listings, the ALJ will determine the claimant's RFC. 20 C.F.R. § 404.1520(a).

In addition to addressing the ALJ's responsibility to conduct a function-by-function analysis, the Fourth Circuit in Mascio held that an RFC assessment must account for the ALJ's step three finding of moderate limitations in concentration, persistence, or pace beyond limiting a claimant to performing only "simple, routine, tasks." 780 F.3d at 638. Courts have further clarified, "Pursuant to Mascio, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." Pulliam v. Colvin, No. 1:13-cv-176, 2016 WL 843307, at *6 (M.D.N.C. March 1, 2016) (citing Talmo v. Comm'r, Soc. Sec., No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015)).

Courts have extended the holding in Mascio to further require an ALJ to either include restrictions in the RFC arising out of those moderate limitations in social functioning or justify the omissions of such restrictions. Dennis v. Berryhill, 362 F. Supp. 3d 303, 308 (W.D.N.C. 2019); see also Russell v. Colvin, No. 1:14-cv-00203-MR-DLH, 2015 WL 3766228, at *4 (W.D.N.C. June 16, 2015) ("Although the ALJ's findings at step two and three may not require an RFC that imposes limitations on social functioning, the ALJ must at least provide a sufficient explanation in the decision to allow this Court to determine why no limitations as to social functioning were included in the RFC despite the ALJ's finding that Plaintiff has moderate difficulties in social functioning."); Ashcraft v. Colvin, No. 3:13-cv-00417-RLV-DCK, 2015 WL 9304561, at *9 (W.D.N.C. Dec. 21, 2015) ("[S]ince Mascio was decided, the majority of other courts in North Carolina have similarly found that, where an ALJ determines that a claimant suffers from 'mild' or 'moderate' limitations in his or her activities of daily living, social functioning, and ability to maintain [CPP] and such limitations are unaccounted for in the RFC, or their absence is

8

unexplained in the analysis surrounding the ALJ's RFC determination, remand is required."). While the ALJ is not obligated to include a corresponding restriction to address interactions with each category of individuals—coworkers, supervisors, and the public—in his RFC determination, see Smith v. Berryhill, 2018 WL 6249692, at *8 (D. Md. Nov. 29, 2018), the ALJ has the burden to make findings of fact and resolve evidentiary conflicts. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citations omitted). This requires the ALJ to provide a narrative explanation with citations to evidence to support it. Mascio, 780 F.3d at 636 (citation and internal quotation marks omitted). In other words, the ALJ must build an accurate and logical bridge from that evidence to his conclusion. Monroe, 826 F.3d at 189.

Here, the ALJ found Linares has a "moderate limitation" with "interacting with others." (Tr. 25). Therefore, the ALJ is required "either to: (1) include a corresponding limitation in the RFC analysis, or (2) explain why such a limitation was not warranted." Stacy v. Berryhill, No. 3:18 CV 279, 2019 WL 4023609, at *5–6 (W.D.N.C. Aug. 9, 2019), report and recommendation adopted sub nom. Stacy v. Saul, No. 3:18-CV-00279-MR-WCM, 2019 WL 4021030 (W.D.N.C. Aug. 26, 2019). In Linares's RFC, the ALJ included limitations to "occasional public contact" but was silent about interactions with coworkers and supervisors. (Tr. 712). In his decision, the ALJ explained that:

> In regard[s] to interact[ions] with others, the claimant has moderate limitations. The evidence shows that the claimant has few social contacts outside her family and tends to keep to herself, but denies any difficult getting along with others in public or in past jobs. The claimant is able to cooperate and handle conflicts with others.

(Tr. 712). While the Court recognizes it is not necessary for an ALJ to address interactions with each category of individuals in his RFC determination, see Dennis v. Berryhill, 362 F. Supp. 3d 303, 309 (W.D.N.C. 2019), "the Court should not be 'left to guess about how the ALJ arrived at

9

his conclusions.'" Whitaker v. Saul, No. 1:19 CV 223, 2020 WL 3261009, at *3 (W.D.N.C. May 29, 2020), report and recommendation adopted, No. 1:19-CV-223-MOC-WCM, 2020 WL 3260064 (W.D.N.C. June 16, 2020) (citing Mascio, 780 F.3d at 637). In the instant case, the ALJ's decision fails to explain why the Linares's "moderate limitation" with "interacting with others" does not translate into a limitation on interacting with coworkers or supervisors. As it is currently articulated, the ALJ's decision does not resolve this potentially conflicting evidence, and it is not the Court's role to do so. Hays, 907 F.2d at 1456 (citations omitted).

The Commissioner argues that under Shinaberry v. Saul, "the ALJ's rationale was sufficient to explain why the mental RFC appropriately accounted for [Plaintiff's] mental impairment(s) and limitations [because] the ALJ 'discussed in detail the psychological evaluations performed by Social Security Administration psychological consultants' and other evidence . . . ." (Doc. No. 20, p. 7) (quoting Shinaberry v. Saul, 952 F.3d 113, 120-22 (4th Cir. 2020)). In support of his argument, the Commissioner points to the ALJ's decision giving significant weight to the opinion of psychological consultant Dr. Cyr-McMillon. (Doc. No. 20, p. 9). Specifically, the ALJ noted:

> [T]he undersigned gives significant weight to Richard H. Cyr-McMillon, Ph.D., also a non-examining State agency psychological consultant who found the claimant has moderate limitations in maintaining social functioning and in maintaining concentration, persistence or pace (Exhibits 1A, 3A).

(Tr. 718). However, unlike the discussion in Shinaberry, the ALJ's discussion here lacks both detail and explanation, and thus, "does not give any insight into the ALJ's RFC assessment process." Shawn S. v. Saul, No. CV DLB-19-1188, 2020 WL 4042850, at *3 (D. Md. July 17, 2020). While the Court recognizes that, under Shinaberry, no "categorical rule that requires an ALJ to always include moderate limitations . . . as a specific limitation in the RFC," 952 F.3d at

10

121, "nothing in Shinaberry states the ALJ is absolved from including 'an explicit conclusions about how [the claimant's] mental limitations affect her ability to perform job-related tasks for a full workday—a benchmark established by the [S.S.A.'s] own regulations.'" Kirk T. v. Saul, No. CV CBD-19-1274, 2020 WL 2992529, at *9 (D. Md. June 4, 2020) (alteration in original) (quoting Thomas, 916 F.3d at 312). At no point in the decision does the ALJ specifically address the question of whether Linares needs limitations in her interactions with supervisors and coworkers or provide an explanation for why that is not necessary. Without further explanation, the Court is again "left to guess about how the ALJ arrived at his conclusion." Mascio, 780 F.3d at 637.

Therefore, the Court agrees with Linares that the decision must be remanded to specifically address the question of whether Linares needs limitations in her interactions with supervisors and coworkers or provide an explanation for why that is not necessary, including citing to specific evidence in the record.

The Court explicitly notes that in ordering remand pursuant to sentence four of 42 U.S.C. § 405(g), the Court does not take a position on the merits of Linares's application for disability benefits nor does the Court express any opinion as to Linares's other assignments of error. The Court finds the ALJ's decision deficient for the reasons stated herein, and consequently, that decision as written cannot stand. See, e.g., Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision[.]" (citations omitted)). In declining to address the other assignments of error in dicta here,[2] the Court notes that

---

[2] The Court recognizes the Fourth Circuit, on occasion, will address additional assignments of error notwithstanding an order to remand. See Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) (noting that "[n]ormally, our opinion would end here, and we would not go beyond ordering the ALJ to apply the regulation that it failed to observe;" but then summarily directing the ALJ to provide a more detailed explanation as to other errors "in the interests of judicial efficiency...."); Bird, 699 F.3d at 343 (citing Sharpe v. Dir., Office of Workers' Comp. Programs, 495 F.3d 125, 134 n. 16 (4th Cir. 2007) (providing instructions for ALJ to follow on remand regarding

11

remand provides the opportunity for the ALJ to modify any prior basis for the prior decision in the new decision issued upon remand. "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of litigation,' and a sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the Secretary's final decision." Shalala v. Schaefer, 509 U.S. 292, 299, 113 S. Ct. 2625, 2630, 125 L.Ed. 2d 239 (1993) (quoting Sullivan v. Finkelstein, 496 U.S. 617, 624-25, 110 S.Ct. 2658, 2663, 110 L.Ed.2d 563 (1990)).

## IV. CONCLUSION

For the foregoing reasons, Linares's Motion for Summary Judgment (Doc. No. 15) is GRANTED; the Commissioner's Motion (Doc. No. 19) is DENIED; and the ALJ's determination is REVERSED and REMANDED to the Commissioner for further proceedings consistent with this ORDER.

IT IS FURTHER ORDERED that the Court also GRANTS, *nunc pro tunc*, the pending motions for extensions of time (Doc. No. 18, 21) such that all responses are deemed timely filed.

IT IS SO ORDERED.

Signed: October 2, 2020

Frank D. Whitney
United States District Judge

---

issues not dispositive on appeal); Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984) ("Since the case must be reconsidered by the Secretary, we do provide some guidance as to a matter very likely to arise at the hearing which will occur.")). Nevertheless, here, the Court declines to consider Linares' other assignments of error, as they can be revisited on remand.

12

Case 5:19-cv-00129-FDW   Document 23   Filed 10/02/20   Page 12 of 12